# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LETICIA ANN ANDRADE, | ) | 1:10cv02148 AWI DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PLAINTIFF'S |
| v. | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff LETICIA ANN ANDRADE ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for Findings and Recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications on May 16, 2007, alleging disability since January 7, 2006, due to bipolar disorder, anxiety, fibromyalgia, irritable bowel syndrome ("IBS"), a right eye

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  problem, chronic urinary tract infections and kidney infections.  AR 24-27, 28-31, 178-186.

2  After her applications were denied initially and on reconsideration, Plaintiff requested a hearing

3  before an Administrative Law Judge ("ALJ").  AR 78-81, 87-91, 93.  ALJ William C. Thompson

4  held a hearing on February 10, 2009, and issued a decision denying benefits on October 8, 2009.

5  AR 9-22, 38-62.  The Appeals Council denied review on September 17, 2010.  AR 1-5.

6          Hearing Testimony

7          ALJ Thompson held a hearing on February 10, 2009, in Stockton, California.  Plaintiff

8  appeared with her attorney, Sengthiene Bosavanh.  Vocational expert ("VE") Thomas Linvil also

9  appeared and testified.  AR 38.

10         Plaintiff testified that she was 42 years old at the time of the hearing.  She attended

11  twelfth grade but received her GED.  Plaintiff was 5 feet, 2 inches tall and weighed 235 pounds.

12  She is single and has three children, ages 17, 19 and 23.  Her 17 year old still lives with her.  AR

13  42.  Plaintiff has been on AFDC since December 2004 and last worked in 2006.  She stopped

14  working because she had family problems, including a lot of family deaths around the same time,

15  and she couldn't cope.  AR 43.

16         Plaintiff explained that she cannot work now because she has severe fibromyalgia, severe

17  IBS and panic attacks.  AR 44.  She was diagnosed with fibromyalgia in 1999 and takes

18  medications for it.  AR 44.  Plaintiff also takes medications for IBS.  When she has an IBS

19  attack, she has contractions and has to go to the bathroom, sometimes for up to 30 minutes.

20  When she has an attack, she's down for the day because she needs to be in the bathroom at least

21  every other hour.  AR 45.  Plaintiff estimated that she could be in the bathroom for up to six

22  hours a day.  When she comes out, she's so exhausted that she has to lie down.  Plaintiff has this

23  type of attack at least twice a month.  AR 49.  These attacks could last up to two days each.

24  Stress and food can trigger attacks.  AR 50.

25         Plaintiff testified that she has panic attacks two or three times a day.  AR 46.  She takes

26  Xanax for the attacks, which helps.  AR 46.  An attack lasts about 10 minutes.  AR 51.

27         Plaintiff lives in a three bedroom house, which is able to clean at five minute

28  intervals.  AR 46.  She thought that she could walk for about 10 to 15 minutes at a time, stand for

2

10 minutes at a time and sit for two hours. AR 47. She can cook, but not often because she gets fatigued standing in one spot. She goes to the grocery store once in a while but she always has to have someone with her because she could get disoriented. AR 47-48. Plaintiff can dress and bathe herself, though it is difficult because of her weight. AR 48. She has gained 50 pounds in the past six months, which doctors attribute to her medications. AR 48.

Plaintiff explained that she could not return to her accounting job because she blanks out at times in the middle of the sentence and forgets what she's talking about. AR 48.

Plaintiff does not like to be around people because it makes her nervous and uncomfortable. AR 52. Her concentration is not good and after a couple of minutes of conversation, she loses track. AR 53. Plaintiff could answer the questions at the hearing because she was focusing on one question at a time, though she had been lost a little at times. AR 53.

Plaintiff also explained that she has bipolar disorder and when she gets manic, she tries to clean the house all day. The next day, however, she pays for it and is in bed all day due to severe pain all over. AR 53-54. When she is depressed, she doesn't want to get up or take a shower. AR 54. She takes sleeping pills to help her sleep, but still gets up at least twice a night. AR 54. A CPAP machine for sleep apnea has also been ordered. AR 54. Fibromyalgia causes her to wake up in severe pain and she is not well rested. AR 55.

Plaintiff has about three bad days a week when she is in bed. She explained that after the hearing, she would probably go home and go to sleep because the questions fatigue her. AR 55-56.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience who could lift 20 pounds occasionally, 10 pounds frequently, stand and walk in combination for at least six hours and sit for at least six hours. This person could not climb ladders, ropes or scaffolding and should not work around heights or hazardous machinery. This person would also be limited to work involving simple instructions. The VE testified that this person could not perform Plaintiff's past work but could perform the job of housekeeper. AR 57-58.

1   For the second hypothetical, the ALJ asked the VE to assume that this person could lift 10

2   pounds occasionally and could move small objects throughout the day.  This person could stand

3   and walk in combination for periods of not more than 30 minutes, for no more than two hours

4   total, and could sit for the remainder of the day without limitation.  This person could not climb

5   ladders, ropes or scaffolding and should not work around heights or hazardous machinery.  This

6   person would also be limited to work involving simple instructions.  The VE testified that this

7   person could not work because there were not a significant number of jobs that would allow for

8   the standing/walking flexibility.  AR 58-59.

9   Plaintiff's attorney asked the VE to assume a person with moderate difficulties in

10  maintaining concentration, persistence or pace, in addition to the other limitations in the first

11  hypothetical.  The VE testified that the housekeeper position would still be available because it is

12  a very basic job.  AR 59-60.

13  If this person was markedly limited in activities of daily living, maintaining social

14  functioning and maintaining concentration, persistence or pace, there would be no work

15  available.  AR 60.

16  If this person, because of IBS, had to be out of work for at least four random days per

17  month, she could not work.  AR 61.

18  Medical Record

19  In August 2006, Plaintiff underwent surgery to correct urinary incontinence.  AR 245-

20  247.

21  Beginning in July 2006, Plaintiff attended depression group therapy at Stanislaus County

22  Behavioral Health.  She often reported feelings of hopelessness and guilt, as well as family

23  problems.  AR 257-268.

24  On March 1, 2007, Plaintiff reported that she was off her medications for a week while on

25  a trip to Las Vegas for her daughter's 21st birthday, but that she started taking them again when

26  she returned.  Plaintiff also reported memory problems, which may be related to her medication

27  or her anxiety issues.  AR 273, 274.  On March 22, 2007, she reported that she was sleeping

28  "pretty good" and felt like she was getting stronger.  AR 270.

In May 2007, Plaintiff was tearful when discussing recent losses and family issues.  AR
302

In June 2007, Plaintiff reported numerous falls and she was referred to her primary care
physician.  AR 297.  She was tearful at times when discussing issues with her children.  AR 300.

On July 9, 2007, Plaintiff's attendance at group therapy was noted as "inconsistent."  AR
294.

In 2007, Plaintiff treated with Soma Krishnamoorthi, M.D., for constipation, pain,
fibromyalgia, depressed mood and medication refills AR 211-217.

On September 5, 2007, Plaintiff saw Miguel Hernandez, M.D., for a consultive
examination.  She complained of bipolar disorder, which was diagnosed about a year ago and not
helped with medication.  She also reported anxiety disorder, fibromyalgia, IBS, chronic urinary
tract infections and memory impairment.  Plaintiff stated that she was very depressed and
chronically tired, with no desire to do anything.  She needed help doing things around the house
because of lack of energy and should could not stand, walk or sit for very long.  AR 318-319.

On examination, Plaintiff was in no apparent distress and walked into the room without
difficulty.  She had a somewhat flat affect with minimal eye contact.  Coordination was intact
and her gait was normal.  Plaintiff had several areas of tenderness to points of palpation in the
para lumbar and para thoracic musculature, though range of motion testing was unremarkable.
Plaintiff had decent generalized muscle tone throughout both her upper and lower extremities
bilaterally and motor strength was 5/5 throughout.  Sensation was intact and grip strength was
about 50 pounds of pressure bilaterally.  AR 320-321.

Dr. Hernandez diagnosed bipolar disorder type 2, anxiety disorder, fibromyalgia, IBS,
chronic urinary tract infections and memory impairment.  He opined that Plaintiff could stand
and/or walk for six hours and sit for six hours.  She could lift and carry 20 pounds occasionally,
10 pounds frequently and had no postural or manipulative limitations.  Dr. Hernandez noted that
environmental limitations would be attributable to her bipolar and anxiety disorder though he did
not specify any limitations.  AR 319-321.

On September 21, 2007, State Agency physician G.W. Bugg, M.D., reviewed Plaintiff's medical records.  He noted that her mental health treatment notes indicate that she has continued to improve, despite a couple of troublesome times related to family deaths.  Her mental status examinations during her treatment with Stanislaus County showed normal cognition/orientation, intact insight and judgment and no hopelessness.  Dr. Bugg believed that she had improved enough to return to work and opined that Plaintiff could perform simple, repetitive tasks with no contact with the general public.  As for her physical limitations, Dr. Bugg believed that Dr. Hernandez's light RFC was not supported by objective evidence as his examination was unremarkable.  He suggested that Plaintiff's physical impairments were non-severe.  AR 322-323.

On October 5, 2007, State Agency physician S. Bortner, M.D., completed a Psychiatric Review Technique form.  Dr. Bortner opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  AR 326-339.

Dr. Bortner also completed a Mental Residual Functional Capacity Assessment.  Dr. Bortner opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number of breaks.  He noted that Plaintiff suffers from bipolar disorder but has achieved a stable level of improvement.  Limitations in activities of daily living were primarily due to her pain condition.  Plaintiff could understand and execute both simple and some moderately complex instructions, make work-related decisions, interact with others and adapt to workplace change.  AR 342-345.

In December 2007, Dr. Krishnamoorthi noted that Plaintiff was stable on her anxiety medication.  AR 215.

On December 12, 2007, Plaintiff saw Feng Bai, M.D., after referral for management of chronic pain.  Plaintiff complained of pain all over her body for the past 10 years, worse in her lower back.  Plaintiff also reported constant throbbing and sharp pain with radiation down her

1   legs with a burning sensation.  Standing, sitting and lying down increase her symptoms and she

2   reported partial relief with pain medication.  She denied bladder and bowel incontinence.  AR

3   381.    On examination, Plaintiff was in no acute distress but had significant anxiety and

4   depressed mood.  Plaintiff ambulated without an assistive device or footdrop but moved slowly

5   due to pain.  She was able to do tiptoe and heel walking and peripheral joints had full range of

6   motion in bilateral upper and lower limbs.  Cervical spine range of motion was within normal

7   limits but lumbar range of motion was mildly decreased due to pain.  Straight leg test was

8   negative bilaterally.  Manual muscle strength in bilateral upper and lower limbs was 5/5 with

9   normal tone, but with generalized giveaway weakness due to pain.  Sensation was normal.  On

10  palpation, Plaintiff had diffuse tenderness at the cervical, thoracic and lumbar paraspinal muscles

11  and bilateral upper and lower limbs in a diffuse pattern.  AR 381.

12       Plaintiff returned to Dr. Bai on January 10, 2008.  Her examination was generally

13  unchanged.  Dr. Bai diagnosed chronic low back pain, probably lumbar degenerative disease,

14  myofascial pain and chronic pain syndrome with anxiety and depressed mood.  He encouraged

15  Plaintiff to start physical therapy and home exercise and control her weight.  He also prescribed

16  Ultram and Soma and instructed her to stop Methadone and Baclofen.  AR 379.

17       A mental status examination performed at Stanislaus County Behavioral Health on

18  January 18, 2008, indicated that Plaintiff's mood was euthymic and appropriately reactive.

19  Plaintiff reacted to humor and used humor.  Speech, though process and thought content were

20  normal.  Plaintiff's cognition and orientation were grossly intact and insight and judgment were

21  "adequate to adhere to treatment plan."  Plaintiff was future-oriented with no acute mental

22  deficiencies, no "hopelessness-generating health deficits" and no suicidal ideations.  She was

23  deemed low risk.  AR 346.

24       On January 29, 2008, State Agency physician Kevin D. Gregg, M.D., reviewed the

25  evidence and opined that Plaintiff could perform simple, repetitive tasks with some moderate

26  complex tasks.  He also opined that Plaintiff did not have a physical impairment.  AR 354.

27       On January 30, 2008, Lyle B. Forehand, Jr., M.D., Plaintiff's treating psychiatrist, opined

28  that Plaintiff had a mood disturbance, manic symptoms and bipolar disorder.  He believed that

she would have marked restrictions of activities of daily living, marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace.  In a medical source statement, Dr. Forehand opined that Plaintiff's ability to understand, remember and carry out an extensive variety of technical and/or complex tasks was severely limited when she was depressed, which was once every three weeks.  Plaintiff had no impairment in understanding or remembering simple instructions when she was depressed, but had a moderate impairment in carrying out simple instructions.  She was moderately impaired in her ability to deal with the public at all times, but her impairment would be severe when depressed.  Plaintiff was moderately limited in her ability to maintain concentration and attention in two hour increments at all times, but would be severely limited when depressed.  Plaintiff was severely impaired in her ability to withstand the stress and pressures associated with an eight hour work day because of "undertreated episodes of mental illness" and three years of not working.  He believed that Plaintiff could do well in a rehabilitation program and eventually transition to competitive employment in more than a year.  AR 355-358.

Plaintiff saw Dr. Bai on February 7, 2008.  She reported that Soma was not effective and rated her pain level at a 5 out of 10.  On examination, she was in no acute distress but had significant anxiety and depressed mood.  Her physical examination was generally unchanged. Dr. Bai added possible fibromyalgia as a diagnosis and re-prescribed physical therapy.  He encouraged her to start physical therapy and home exercise and prescribed Ultram and Flexeril. He also encouraged her to control her weight and told her to follow up in four weeks.  AR 378.

Plaintiff returned to Dr. Bai on February 21, 2008, after losing all her medication during vacation the previous week.  Plaintiff was out of pain medication and rated her pain at a 7 out of 10.  Her examination was unchanged and Dr. Bai encouraged her to start physical therapy and home exercise and told her to be very careful with her medications.  AR 377.

Plaintiff saw Dr. Bai again on March 20, 2008.  Her examination and diagnoses were unchanged.  He again encouraged Plaintiff start physical therapy and home exercise, encouraged her to control her weight and prescribed medications.  AR 376.

Plaintiff returned to Dr. Bai on May 30, 2008.  She reported falling out of bed and increased low back pain, rated at an 8 out of 10.  Her examination was unchanged.  Dr. Bai changed her medications and encouraged her to start physical therapy and home exercise and control her weight.  AR 375.

On August 12, 2008, Plaintiff saw Dr. Bai and complained of increased low back pain radiating to her bilateral legs with feet numbness.  Her examination was unchanged.  Dr. Bai diagnosed chronic low back pain and radicular pain with probable lumbar disc degenerative disease, myofascial pain syndrome with possible fibromyalgia and chronic pain syndrome with anxiety and depressed mood.  He also performed six trigger point injections and again encouraged her to start physical therapy and home exercise.  AR 374.

On September 9, 2008, Plaintiff saw Jonathan S. Davidson, M.D., for a gastroenterology consultation.  On examination, Plaintiff was obese.  Her abdomen was protruberant, with mid-abdominal fullness.  There were no masses or tenderness.  Her mood and affect were normal.  Dr. Davidson diagnosed chronic diarrhea, chronic emesis of unknown etiology and hematochezia.  AR 422-424.

On September 11, 2008, Dr. Krishnamoorthi opined that Plaintiff could not work and explained that she was being treated for a chronic condition.  Dr. Krishnamoorthi also opined that Plaintiff could stand/walk 0-2 hours at one time, for 0-2 hours total and sit for 2-4 hours at a time, for 2-4 hours total.  She could never lift more than 25 pounds and could never crouch or crawl.  Plaintiff could occasionally climb, stoop, kneel and reach below the knees and above the shoulders.  She could frequently balance and reach in certain directions.  Plaintiff was also taking medications for pain that could cause drowsiness and had limited ability to learn in a classroom setting due to poor concentration and depressed mood.  Plaintiff had fair social skills and could get along with the doctor's staff.  She could also understand and complete simple tasks, but would not have good adaptation skills.  AR 388-391.

On September 26, 2008, Dr. Davidson performed an esophagogastroduodenoscopy and biopsy.  The duodenum up to the second part was normal.  The stomach had inflammation and

was biopsied.  The esophagus had an "OPEN LES," which was a cause of chronic emesis.  He recommended PPI therapy and antireflux measures.  AR 426.

On October 3, 2008, Dr. Davidson performed a colonoscopy and removed a polyp.  No malignant lesions were found.  He recommended a high fiber diet and follow-up in two weeks.  AR 420-421.

Plaintiff returned to Dr. Bai on November 4, 2008, and reported that the trigger point injections helped.  Plaintiff rated her pain at an 8 out of 10.  She continued to deny bladder and bowel incontinence.  Her examination and diagnoses were unchanged.  A nerve conduction/electrodiagnostic study was normal without evidence of periphery nerve neuropathy or lumbar radiculopathy.  Her medications were refilled and she was encouraged to start physical therapy and home exercise and control her weight.  AR 373, 381-382.

Plaintiff underwent a sleep study on February 3, 2009.  The test revealed mild sleep apnea and Dr. Davidson recommended CPAP therapy.  AR 427-

On February 10, 2009, Dr. Davidson completed a Questionnaire.  He listed Plaintiff's primary impairments as IBS and sleep apnea and indicated that she was restricted to sedentary work "when not being treated."  Plaintiff could sit for two hours in an eight hour day and did not need to lie down or elevate her legs.  Plaintiff has problems with incontinence and goes to the bathroom frequently.  Plaintiff could lift 30 pounds frequently.  AR 418-419.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of obesity, fibromyalgia and bipolar syndrome.  AR 14.  She retained the residual functional capacity ("RFC") to perform light work with a restriction to simple, repetitive tasks and a need to avoid exposure to heights and hazardous, moving machinery.  AR 16.  With this RFC, Plaintiff could not perform her past relevant work but could perform a significant number of jobs in the national economy.  AR 20-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla,"

Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v.

Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th

Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in

substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than 12 months. 42

U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th

Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found

that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her

disability; (2) has an impairment or a combination of impairments that is considered "severe"

(obesity, fibromyalgia and bipolar syndrome) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work; but (5) could perform a significant number of jobs in the national economy.  AR 14-21.

Here, Plaintiff argues that the ALJ (1) failed to evaluate numerous impairments; (2) gave insufficient reasons for rejecting the treating physicians' opinions; and (3) failed to give sufficient reasons for discrediting her testimony.

## DISCUSSION

A.    Analysis of Plaintiff's Impairments

Plaintiff first argues that the ALJ failed to evaluate IBS, chronic low back pain and obesity at step two of the sequential evaluation process and beyond.  In support of her argument, Plaintiff cites medical evidence that she contends establishes severity and/or additional limitations.

Plaintiff bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if his impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting.  20 C.F.R. § 404.1521(b).

"An impairment ... may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (internal quotation omitted).  The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Id.*; SSR 85-28.  Step two, then,

1  is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80

2  F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe

3  impairment or combination of impairments only when his conclusion is "clearly established by

4  medical evidence."  SSR 85-28.

5        Here, the ALJ found that Plaintiff's obesity, fibromyalgia and bipolar disorder were

6  severe impairments at step two.  In making this finding, he noted that Plaintiff had been

7  diagnosed with IBS and chronic low back pain but concluded that "there is minimal evidence to

8  corroborate or support any finding of significant vocational impact related to them."  AR 15.

9        Plaintiff contends that the ALJ did not "specifically discuss" these impairments, but she is

10  incorrect.  The ALJ discussed Dr. Hernandez's diagnosis of IBS, as well as his belief that

11  Plaintiff could nonetheless sit for six hours and stand and/or walk for six hours.  AR 14, 19.  The

12  ALJ also discussed the more restrictive opinions of Dr. Krishnamoorthi and Dr. Davidson and

13  explained why he did not credit them.  AR 19-20.  As explained below, the ALJ did not err in his

14  treatment of the opinion evidence.

15        Plaintiff suggests that the ALJ's finding that her IBS was not severe was "uniquely

16  harmful" because a hypothetical based on her own description of her limitations suggested that

17  she could not work.  This argument, however, incorrectly presumes that such limitations would

18  automatically follow a finding that her IBS was severe.  A finding of severity at step two, as to

19  *any* impairment, simply allows the evaluation to continue.  It does not mean that specific

20  limitations must be attached to the RFC.

21        As to Plaintiff's low back pain, the ALJ noted Dr. Bai's diagnosis of chronic low back

22  pain, likely secondary to lumbar disc degenerative myofascial pain.  AR 15.  He also set forth

23  minimal examination findings by Dr. Bai and Dr. Hernandez, as well as a normal EMG.  AR 17.

24  The ALJ also cited Plaintiff's daily activities, which were not limited to the extent one would

25  expect given her complaints.  AR 18.  As discussed below, the ALJ did not err in these findings.

26        After citing Dr. Bai's diagnoses, Plaintiff states that the ALJ erred by failing to order

27  additional testing in assessing her lower back pain, myofascial pain and fibromyalgia.  The

28  existence of a diagnosis, however, is not the standard for further developing the record.  Instead,

1    the ALJ is under an obligation to develop the record only where it is inadequate or ambiguous.

2    *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).  Plaintiff makes no such suggestion.

3     Plaintiff contends that the ALJ "failed the severity test set up in *Webb*" by not finding IBS

4    and chronic low back pain severe impairments at step two.  *Webb*, however, involved a

5    sequential evaluation that *ended* at step two after a finding that the claimant did not have *any*

6    severe impairments.  In such cases, the step two severity finding becomes more significant

7    because it terminates the analysis and prevents any further discussion of the impact of Plaintiff's

8    impairments.

9     Here, however, Plaintiff prevailed at step two based on her bipolar disorder, obesity and

10   fibromyalgia.  AR 14.  Once a plaintiff prevails at step two, regardless of which condition is

11   found to be severe, the Commissioner proceeds with the sequential evaluation, considering at

12   each step all other alleged impairments and symptoms that may impact her ability to work. 42

13   U.S.C. § 423(d)(2)(B).  Even though the ALJ found Plaintiff's IBS and low back pain to be non-

14   severe, he analyzed the impairments' effects on residual functional capacity at a subsequent step.

15   20 C.F.R. § 404.1545(a)(2); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  AR 15,

16   17-19.  Therefore, the Court finds that, even if the ALJ committed error at step two by not

17   concluding that Plaintiff's IBS and low back pain were severe, it was harmless and does not

18   necessitate remand.

19    Finally, Plaintiff argues that even though the ALJ found her obesity to be severe at step

20   two, the ALJ failed by not considering its impact on her low back pain, sleep apnea, depression,

21   anxiety and pain.  Plaintiff is correct that obesity must be considered throughout the sequential

22   evaluation process, including when determining an individual's RFC.  SSR 02-1p.  "The

23   combined effects of obesity with other impairments may be greater than might be expected

24   without obesity."  SSR 02-1p.  The Ninth Circuit recently held that, pursuant to SSR 02-1p, the

25   ALJ must consider obesity in determining RFC based on the information in the case record.

26   *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

27    In examining Plaintiff's obesity, the ALJ explained that although it might increase the

28   severity of her impairments, it did not prevent her from ambulating, breathing properly,

performing gross or fine movements or regularly performing routine movements and necessary

physical activity.  AR 18.  Plaintiff did not have any significant medical conditions associated

with obesity, such as diabetes, kidney or liver disorders or severe fatigue.  "As a result, the

claimant's obesity, combined with her severe impairments, does not prevent her from performing

all work activities."  AR 18.

Plaintiff contends that the ALJ failed by not evaluating her obesity in combination with

weight bearing back pain, sleep apnea, depression, and anxiety and pain as these "can be

exacerbated by morbid obesity."  Opening Brief, at 9.  She points to no instances, however,

where her obesity caused any functional limitations apart from those already considered by the

ALJ.  Indeed, although her obesity was noted in the record and she was often encouraged to lose

weight, neither Plaintiff nor her physicians cited obesity as a limiting impairment.  AR 373, 375,

376, 378, 379, 422-424.  Moreover, although Plaintiff testified that her weight made it more

difficult, she was still able to dress and bathe herself.  AR 48.

Accordingly, based on the above, the ALJ properly analyzed Plaintiff's impairments at

step two and throughout the evaluation.  The analysis was supported by substantial evidence and

was free of legal error.

B.    Analysis of Medical Opinions

Next, Plaintiff argues that the ALJ improperly disregarded the opinions of Dr.

Krishnamoorthi, Dr. Davidson and Dr. Forehand.

The opinions of treating doctors should be given more weight than the opinions of

doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998);

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not

contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating

doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*

(quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out

a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

*Dr. Krishnamoorthi and Dr. Davidson*

In September 2008, Dr. Krishnamoorthi set forth limitations that would preclude work. AR 388. In February 2009, Dr. Davidson opined that without treatment, Plaintiff could not perform more than sedentary work due to IBS and sleep apnea. AR 418-419.

Recognizing that a treating physician's opinion is entitled to special significance, the ALJ rejected both opinions in favor of examining physician Dr. Hernandez. AR 19. He first explained that the opinions appeared on "fill-in-the-blank forms with only marginal notes attached to them" and lacked citations to medical testing results or objective observations. AR 19. Brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate

16

reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As the ALJ noted, Dr. Krishnamoorthi's opinion is set forth on an "Authorization to Release Medical Records" and, even though there is space for "comments," most of the sections allowing for explanation are blank. AR 389. For example, Dr. Krishnamoorthi does not explain why Plaintiff can sit for only 2-4 hours in a day, walk for 0-2 hours, lift up to 25 pounds and never crouch or crawl. Dr. Krishnamoorthi's only comments are that her medication "may" cause drowsiness and that Plaintiff has a "limited ability to learn in a classroom setting due to poor concentration and depressed mood." AR 390. Plaintiff contends that Dr. Krishnamoorthi's opinions are in fact supported because she relied on her own "extensive findings," Dr. Bai's findings and Dr. Davidson's findings. However, her opinion makes no reference to any of her findings or those of other physicians.

Similarly, Dr. Davidson's opinions are set forth on a Questionnaire and are based on Plaintiff's IBS and sleep apnea. When asked to set forth objective findings upon which he bases his sit, stand and walk limitations, he offers no explanation. AR 418. Although Plaintiff contends that he bases his limitations on his own examinations and repeated surgeries, he cites neither. Moreover, while Dr. Davidson diagnosed chronic diarrhea, he does not explain why this diagnosis translates into the above limitations. Dr. Davidson does note that Plaintiff goes to the bathroom frequently, but he does not explain why this would result in sitting, walking and standing limitations. Plaintiff also cites "repeated surgeries," but Dr. Davidson does not cite the results to support his opinion.

Next, the ALJ explained that these severe limitations conflicted with the substantial evidence of the record. AR 19. Most notably, Dr. Hernandez examined Plaintiff in September 2007, and other than several areas of tenderness in the para lumbar and para thoracic musculature, her examination was essentially normal. AR 17, 320-321. The ALJ also notes earlier in his decision that in December 2007, Plaintiff denied "bowel and bladder incontinence" and did not mention IBS despite complaining of it in the past. AR 15, 373. Plaintiff also denied

1   bowel and bladder incontinence and failed to mention IBS in follow-up visits with Dr. Bai in

2   January, February, March, May, August and November 2008.  AR 373-379.

3        Additionally, State Agency physicians opined that Plaintiff's physical impairments were

4   not severe, and although the ALJ ultimately disagreed, he noted the discrepancy between these

5   opinions and those of Dr. Davidson and Dr. Krishnamoorthi.  AR 20.  Opinions of State Agency

6   physicians can constitute substantial evidence to reject a treating source where it is combined

7   with other evidence in the record.  *Magallanes v. Bowen,* 881 F.2d 747, 751-752 (9th Cir.1989).

8        Finally, the ALJ noted that statements "that a claimant is 'disabled,' 'unable to work' can

9   or cannot perform a past job, meets a listing or the like are not medical opinions. . . but are

10  [issues] reserved to the Commissioner."  AR 19.  The ALJ is correct insofar as he was discussing

11  Dr. Krishnamoorthi's opinion that Plaintiff could not work.  20 C.F.R. § 404.1529(e)(1)-(3).

12       Ultimately, the ALJ adopted the opinion of Dr. Hernandez over those of her treating

13  sources.  While opinions of treating sources should generally be afforded more weight, the

14  opinion of an examining source can amount to substantial evidence.  As explained above, when

15  an examining physician provides independent clinical findings that differ from the findings of the

16  treating physicians, such findings are substantial evidence.  *Orn*, 496 F.3d at 632.  Here, Dr.

17  Hernandez relied on his own examination findings and came to a different conclusion.  His

18  opinion therefore constitutes substantial evidence.

19       *Dr. Forehand*

20       In January 2008, Dr. Forehand opined that Plaintiff's mental impairment would preclude

21  work.  He also opined that Plaintiff met or equaled the criteria of Listing 12.06.  AR 355-358.

22       The ALJ set forth his opinion but ultimately rejected it for the same reasons that he

23  rejected Dr. Krishnamoorthi and Dr. Davidson's opinions- Dr. Forehand set forth his opinions on

24  a fill-in-the-blank form with little support, his opinion conflicted with the substantial evidence of

25  record and he opined on issues reserved to the Commissioner.

26       As for the nature of his opinion, Dr. Forehand completed a portion of a Psychiatric

27  Review Technique form as well as a Psychiatric Medical Source Statement.  AR 355-358.  The

28

1    Court agrees with Plaintiff that the statement sets forth more documentation than the ALJ

2    suggests, though this does not render the ALJ's overall finding unsupported.  AR 358.

3            For example, as the ALJ found, Dr. Forehand's limitations conflicted with the substantial

4    evidence of record, including three State Agency physicians who found that Plaintiff could

5    perform simple, repetitive tasks.  AR 19- 20.  The ALJ set forth State Agency physician Dr.

6    Bortner's findings in detail, and noted that his opinion included a thorough review of the

7    evidence.  AR 20.  Dr. Bortner concluded that treatment notes showed that Plaintiff "has

8    achieved stable level of improvement."  Indeed, Dr. Forehand's mental status examinations

9    generally found that Plaintiff reacted to humor and used humor, had no perceptual disturbances,

10   had grossly intact cognition and orientation, and was future-oriented with no acute mental status

11   examination deficits, hopelessness-generating health deficits or suicidal ideations.  AR 259, 269,

12   275, 279, 284, 295.  Dr. Bortner also noted that limitations in Plaintiff's activities of daily living

13   were primarily due to her pain condition.  AR 344.  Again, as noted above, opinions of State

14   Agency physicians can constitute substantial evidence to reject a treating source where it is

15   combined with other evidence in the record. *Magallanes v. Bowen,* 881 F.2d 747, 751-752 (9th

16   Cir.1989).

17           Moreover, insofar as Dr. Forehand offered his opinion as to whether Plaintiff's mental

18   impairment met or equaled a Listing, the ALJ was correct to discount the opinion as one reserved

19   for the Commissioner.  20 C.F.R. § 404.1529(e)(1)-(3).

20           Therefore, the Court finds that the ALJ's analysis of the medical opinions was supported

21   by substantial evidence and free of legal error.

22   C.      Plaintiff's Subjective Complaints

23           Finally, Plaintiff argues that the ALJ failed to set forth sufficient reasons for rejecting her

24   subjective testimony.

25           In *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

26   pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

27   subjective complaints:

28

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan, 169 F.3d at 599* (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair, 885 F.2d at 603*; *see also Thomas, 278 F.3d at 958-59*.

Here, the ALJ began his analysis by setting out the objective evidence that conflicted with Plaintiff's testimony. The ALJ listed ample evidence, including Dr. Hernandez's essentially normal examination and a normal EMG study. The ALJ also listed Dr. Bai's repeated findings of normal ambulation, full range of motion in the upper and lower extremities, normal sensation, absence of focal weakness and 5/5 strength with normal tone. AR 17. Moreover, although Plaintiff was diagnosed with fibromyalgia, the record does not show "clinical testing, analysis and consistent medical treatment." AR 18. Instead, the ALJ noted that the diagnosis rested on Plaintiff's "vague complaints of stiffness, pain and fatigue." AR 18. Objective evidence may support a negative credibility finding where, as here, it is not the sole reason for the finding. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Plaintiff objects to the ALJ's discussion of this evidence based on her interpretation of the evidence. She argues that the evidence does in fact support her complaints. Her interpretation does not, however, render the analysis unsupported. The Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)*.

The ALJ next explained that Plaintiff's treatment was generally conservative, routine maintenance.  AR 18.  For example, despite complaints of severe back pain, Dr. Bai repeatedly recommended physical therapy, a home exercise program, weight control, dressing warmly and using a heating pad.  AR 373-379.  An ALJ may properly consider the conservative nature of treatment.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

There were also no significant increases or changes in Plaintiff's medication for bipolar disorder, which indicates that Plaintiff's mental impairment was stable on medication.  AR 18.  The ALJ also noted earlier in his decision that Plaintiff told Dr. Bai that her pain was partially relieved by medication.  *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

The ALJ next notes that Plaintiff did not describe side effects of her medications that would preclude work activity.  Plaintiff disputes this claim and points to Dr. Krishnamoorthi's statement that her medications "may cause drowsiness."  AR 391.  As Defendant points out, Dr. Krishnamoorthi's use of the word "may" does not mean that Plaintiff actually suffered from drowsiness as a result of her medications.  Plaintiff accuses Defendant of "fix[ating]" on the word "may," but the ALJ is entitled to take the word for what it means, especially in light of the absence of other complaints of side effects.

The ALJ also states that no treating source determined that her impairments were "totally debilitating or rendered [her] completely unemployable."  AR 18.  Plaintiff argues that Dr. Krishnamoorthi, Dr. Davidson and Dr. Forehand all opined that Plaintiff was totally unemployable, and while they may have done so, the ALJ properly discredited their opinions.

Finally, the ALJ Plaintiff examined Plaintiff's daily activities and concluded her activities were not limited to the extent that one would expect given her complaints.  For example, Plaintiff has the ability to care for herself and maintain her home.  AR 18.  *See eg.*, *Valentine v. Comm'r Soc. Secy.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence did not suggest Valentine could return to his old job at Cummins, but she thought it did suggest that

Valentine's later claims about the severity of his limitations were exaggerated.").  Plaintiff does not challenge this aspect of the credibility analysis.

For these reasons, the ALJ's credibility analysis was supported by substantial evidence and free of legal error.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Leticia Ann Andrade.

These Findings and Recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  __October 3, 2011__          _____/s/ **Dennis L. Beck**_____
                                     UNITED STATES MAGISTRATE JUDGE